PAUL HIRSCH and A. TERESA HIRSCH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hirsch v. Commissioner
Docket No. 3563-79.
United States Tax Court
T.C. Memo 1984-52; 1984 Tax Ct. Memo LEXIS 621; 47 T.C.M. (CCH) 1006; T.C.M. (RIA) 84052; January 31, 1984. Paul Hirsch and Stan B. Hirsch, for the petitioners. Robert D. Kaiser, for the respondent. *623 COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: In a statutory notice of deficiency dated December 27, 1978, respondent determined deficiencies in petitioners' Federal income taxes as follows: Year
Deficiency
1973
$22,422.93
1974
20,782.42
1975
14,508.88
In an Amendment to Answer filed October 20, 1982, respondent sought additional deficiencies for the taxable years 1974 and 1975. On May 4, 1983, respondent filed a Motion for Partial Summary Judgment pursuant to Rule 121. [1] That motion was granted on June 22, 1983. After concessions, the remaining issues for determination are: (1) Whether the principal purpose of an agreement among the partners of Castleton Project Associates to specially allocate specific amounts of interest deducations to petitioner for the taxable year 1973 was "the avoidance or evasion" of tax within the meaning of section 704(b)(2); (2) Whether the principal purpose of an agreement among the partners of Altamonte Plaza Associates to specially allocate specific amounts of interest deductions to petitioner for the taxable year 1974 was "the avoidance or evasion" of tax within the meaning of section *624 704(b)(2); and (3) Whether petitioner realized long-term capital gain for the year 1975 upon the assignment of his entire interest in certain partnerships that must be recognized to the extent of his negative capital account balances in those partnerships. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Paul Hirsch (petitioner) and A. Teresa Hirsch, husband and wife, resided in Indianapolis, Indiana, at the time they filed their petition herein. Petitioners timely filed their Federal income tax returns for 1973, 1974, and 1975 with the Internal Revenue Service Center, Memphis, Tennessee. Petitioner is an attorney at law licensed to practice in the State of Indiana. During the years in issue he earned between $49,000 and $150,000 per year from that practice. Carl *625 E. Verble was a close friend and major client of petitioner. Petitioner provided legal services to Verble, to members of his family, and to several business entities in which Verble held an interest. Petitioner did not regularly bill for these services, and he did not keep time records or any other detailed records from which the value of his legal services could be ascertained. In addition to serving as Verble's attorney, petitioner held interests at various times in several partnerships controlled by Verble. These partnerships included Castleton Project Associates (Castleton) and Altamonte Plaza Associates (Altamonte). On December 20, 1972, petitioner entered into an agreement whereby he obtained an interest in Castleton. The agreement provided, inter alia, that the purpose of the partnership was to construct, rent, own, and manage commercial real estate; that net profits and net losses were to be allocated 90 percent, 5 percent, and 5 percent to Verble, Richard M. Orr, and petitioner, respectively; and that "[a]ll funds of the partnership shall be distributed in accordance with the percentages herein set out." Petitioner did not contribute any cash to Castleton. His *626 interest was obtained solely in exchang for legal services rendered in the organization of the partnership. Near the end of 1973 petitioner and Verble met to discuss legal fees for that year. Verble, who at that time was short of cash, suggested that in lieu of cash petitioner accept a special allocation of interest expense from a partnership in which they each held an interest. Petitioner decided that the tax benefit he would receive from such an allocation would be reasonable payment for his services performed for Verble. On December 30, 1973, the Castleton partners entered into the agreement whereby $63,000 of interest expense deduction was allocated from Verble to petitioner. The agreement provided that cash flow was not to be affected, that distributions were to be in accordance with the partnership agreement, and that petitioner's capital account was to be charged with the allocation. This allocation of Castleton's interest expense had no relation to the value of legal services, if any, provided by petitioner to that partnership. On February 22, 1974, petitioner obtained a 2-percent interest in Altamonte. This interest was assigned to petitioner by Richard M. Orr in *627 exchange for legal services rendered in the organization of the partnership. The terms of the assignment required petitioner to agree to be bound by all the terms and conditions of the Altamonte partnership agreement. Immediately prior to the assignment, the partnership agreement provided in part: 7. Profit and Loss. The net profits of the partnership shall be divided between the partners in the following percentages: Name of Partner
Percentage
Carl E. Verble
46 1/2%
W. Jane Verble
46 1/2%
Richard M. Orr
7    %
The net losses of the Partnership shall be borne by the partners in accordance with the said percentages herein set out. All funds of the partnership shall be distributed in accordance with the percentages herein set out. After the assignment, the net profit, loss, and distribution percentages were as follows: Name of Partner
Percentage
Carl E. Verble
46 1/2%
W. Jane Verble
46 1/2%
Richard M. Orr
5    %
Paul Hirsch
2    %
Near the end of 1974, petitioner and Verble met to negotiate the amount and method of payment for legal fees for that particular year. Verble was again short of cash, and the parties *628 again agreed to a special allocation of interest expense deduction from a partnership in which they each held an interest. On December 31, 1974, the Altamonte partners entered into an agreement whereby more than $90,000 of interest expense deduction was allocated from Verble and W. Jane Verble, Verble's wife, to petitioner. The agreement provided that petitioner's capital account was to be charged with the allocation. This special allocation had no relation to the value of legal services, if any, provided by petitioner to Altamonte. During 1974 the Castleton partners contemplated transfering a substantial partnership interest to a group of investors known as the Rifkin Group. Verble did not, however, want the Rifkin Group to acquire an interest in certain receivables held by the partnership. Accordingly, on June 30, 1974, and prior to the transfer of any partnership interest, the partners caused these receivables to be transferred from the partnership to the partners. The partners then immediately contributed these receivables to a partnership known as Castleton Project Associates #4 (CPA #4). Petitioner's 5 percent share of these transfers was $18,897.53. The above described *629 transfers were recorded on the partnership books as a decrease in the Castleton partners' capital accounts and an increase in the CPA #4 partners' capital accounts. Castleton did not acquire an interest in CPA #4. On January 1, 1975, petitioner and Orr executed a document in which they assigned their entire interest in Castleton, (as well as other partnerships not involved here) to Verble "[i]n consideration of Ten Dollars ($10.00) and other good and valuable consideration." Part of that document provided: 2. Richard M. Orr and Paul Hirsch are to remain contingently liable to Carl E. Verble to the extent of their negative basis [2] in said partnership. The liability hereby created will be limited to actual cash payments made by Carl E. Verble which Richard M. Orr and Paul Hirsch would have been required to make had they continued to remain as partners but in no event in excess of their negative basis as reflected on the books and records of the various partnerships as of the day of this conveyance. * * * The said liability of Richard M. Orr and Paul Hirsch is further terminated upon the expiration of twenty-five (25) years from the date of this agreement. *630 In his statutory notice of deficiency, respondent determined that the special allocations of interest expense to petitioner in 1973 and 1974 were for the principal purpose of the avoidance or evasion of tax within the meaning of section 704(b)(2) and that, on the assignment of his entire interest in Castleton, petitioner realized and was required to recognize long-term capital gain to the extent of his negative capital account balance in that partnership OPINION Special Allocations - Section 704(b)(2)
Section 704(a) generally provides that a partner's share of income, gain, loss, deduction, or credit shall be determined by the partnership agreement.[3] The general rule is limited, however, by section 704(b)(2). [4] For pre-1976 taxable years, that section provides that a special allocation of an item will be disregarded if the principal purpose of the allocation is the avoidance or evasion of Federal income tax. [5] If a special allocation is disregarded, the partners' shares of the item are determined in accordance with the ratio used by the partners to divide the general *631 profits and losses of the partnership. Section 704(b); section 1.704-1(b)(2), Income Tax Regs.; Orrisch v. Commissioner,55 T.C. 395, 400 (1970), affd. per curiam, an unreported case (9th Cir. 1973, 31 AFTR 2d 73-1069). *632 The determination of whether a special allocation provision is for the avoidance or evasion of tax requires consideration of the provision in relation to all the surrounding facts and circumstances. Orrisch v. Commissioner,supra at 401. Section 1.704-1(b)(2), Income Tax Regs., lists the following relevant criteria: Whether the partnership or a partner individually has a business purpose for the allocation; whether the allocation has "substantial economic effect", that is, whether the allocation may actually affect the dollar amount of the partners' shares of the total partnership income or loss independently of tax consequences; whether related items of income, gain, loss, deduction, or credit from the same source are subject to the same allocation; whether the allocation was made without recognition of normal business factors and only after the amount of the specially allocated item could reasonably be estimated; the duration of the allocation; and the overall tax consequences of the allocation. *633 The most important of these criteria is whether the allocation has substantial economic effect. Goldfine v. Commissioner,80 T.C. 843, 851 (1983). This test requires the consideration of whether the partner to whom the item is specially allocated for tax purposes also bears the economic burdens and benefits of the specially allocated items. Allison v. United State,701 F.2d 933 (Fed. Cir. 1983); Hamilton v. United States, 231 Ct. Cl.    , 687 F.2d 408, 414, 417 (1982); Harris v. Commissioner,61 T.C. 770, 786 (1974); Orrisch v. Commissioner,supra at 403. In order to have substantial economic effect, a partner's allocation of an item of income or deduction must be reflected in his capital account, and the liquidation proceeds of the entity must be distributed in accordance with the capital account balances. Allison v. United States,supra.[6] Moreover, where a partner's capital account reflects a deficit, he must have the obligation upon liquidation to restore that deficit. Absent such an obligation, the other partner *634 or partners would have to bear part of the economic cost of the special allocations that resulted in the deficit capital account. Harris v. Commissioner,supra at 786; Orrisch v. Commissioner,supra at 403-404. The Castleton and Altamonte allocation agreements in issue here each provided that the partners' capital accounts were to be charged with the specially allocated interest expense. These charges caused petitioner to have a deficit in his capital account for each of these partnerships. [7] Language in the original partnership agreements dealing with distributions of funds of the partnership was unaffected by the allocation agreements. Applying the principles of the above cases, we must consider, therefore, whether the liquidation proceeds of the partnerships were to be distributed in accordance with the capital account balances and, in particular, whether petitioner had an obligation upon liquidation to restore the deficits in his capital accounts. *635 Petitioner testified at trial that he had no obligation to repay deficit balances in his partnership account. He now argues that: (1) The terms of the partnership agreements contain no provisions regarding liquidation distributions; (2) the missing terms must be supplied by the Indiana Uniform Partnership Act; and (3) under the provisions of that Act, liquidation distributions must be made in accordance with capital account balances, and a partner with a deficit capital account must restore that deficit. Respondent, on the other hand, asserts that the provisions in the partnership agreements relating to distributions are applicable to distributions upon liquidation. He further argues that under those provisions, the liquidation distributions were not required to be in accordance with capital account balances, and petitioner was not required to restore his deficit capital account balances.
Under the Indiana Uniform Partnership Act, the rules determining rights and duties of partners and the rules for distribution after dissolution are subject to modification by an agreement of the partners. *636 Trifunovic v. Marich, 168 Inc. App. 464, 343 N.E.2d 825 (1976). To the extend that such rights and duties have been modified, the provisions of that Act are inapplicable. [8] Both the Castleton and Altamonte partnership agreements provide that "[a]ll funds of the partnership shall be distributed in accordance with the percentages herein set out." Petitioner would have us interpret this provision as applying only to annual cash flow distributions, an interpretation that we reject. The agreements make no attempt to distinguish annual cash flow distributions from liquidation distributions. The term "all" within the governing provision must be given its usual and literal meaning, i.e., it refers to annual cash flow distributions and liquidation distributions. Because the liquidation distribution terms are set forth within the four corners of each partnership agreement, the Indiana Uniform Partnership Act is not determinative. *637 The terms of the partnership agreements do not require liquidation proceeds to be distributed in accordance with capital account balances, and, upon liquidation, petitioner would not be required to restore the deficits in his capital accounts. Thus, petitioner does not bear the economic burden of the interest expense specially allocated to him. In any event, if the language of the agreement were ambiguous and further indicia of the intention of the parties were necessary, we would take into account petitioner's testimony that the special allocations were payment for his legal services. He could not reasonably be expected to restore deficits based upon adjustments to his capital account arising as payment for unrelated legal services rendered to Verble. Accordingly, we conclude that the special allocations did not have substantial economic effect and that the allocations were made for the principal purpose of avoiding or evading tax within the meaning of section 704(b)(2). Our conclusion reached herein is supported by other facts and circumstances in this case. For example, neither of the allocations of interest expense related to the value of legal services performed for Castleton *638 or Altamonte by petitioner; interest was the only item that was adjusted by the parties; the allocation agreements were executed on December 30, 1973, and December 31, 1974, at times when the amount of interest expense available and the tax effect of the special allocation should have been known; each allocation was a one-time one-year arrangement; and in each year petitioner had large amounts of income that would be offset by the additional interest deduction. All of these facts are indicia of tax avoidance motives. See Goldfine v. Commissioner,supra at 854; Orrisch v. Commissioner,supra at 401; section 1.704-1(b)(2), Income Tax Regs.
Finally, petitioner has not suggested that he ever reported as income the tax benefits he bargained for in payment of his legal services. He testified that he-- received in * * * [1973] a sum of approximately $22,00 plus in return for legal services, and I accepted that. * * * * * * * * * I accepted the disproportionate allocation again [in 1974] as payment for the legal services that were rendered to these various entities and * * * [Verble] and his family, which *639 resulted, according to the government calculations again on A-3, in a tax benefit of some $20,000 to me. The same rationale is applicable to what occurred here and what occurred in 1973. I would like to emphasize the fact that I was dealing with an extremely close friend who is still an extremely close friend, and even though we were doing business together as most friends are not unaccumstomed to doing we did not bicker and banter about things of this nature. I felt it was fair. He felt it was fair. And I accepted it. Surely the attempted trading in tax deductions in this case can only, in common sense, be viewed as an attempt to avoid income taxes. Assignment of Partnership Interest
Section 741 generally provides that the sale or exchange of an interest in a partnership will be treated as the sale or exchange of a capital asset. [9] The capital gain or loss is measured by the difference between the amount realized and the adjusted basis of the partnership interest, as determined under section 705. Section 1.741-1(a), Income Tax Regs. *640 The amount realized is the sum of any money and the fair market value of any property received for the interest (section 1001(b)), plus the transferor partner's share of liabilities assumed by the transferee (section 752(d)). On January 1, 1975, petitioner and Orr each assigned his entire interest in Castleton to Verble "[i]n consideration of Ten Dollars ($10.00) and other good and valuable consideration." At the time of these assignments, petitioner had a deficit capital account balance in that partnership. Respondent argues that petitioner was released from liabilities to the extent of this deficit capital account balance in Castleton *641 and assets that petitioner realized and must recognize long-term capital gain in that amount. [10] Petitioner, on the other hand, argues (1) that he was not released from liability and (2) if he was released from liability, respondent's determination of the amount of his deficit capital account balance is incorrect. We have concluded that under the provisions of the Castleton partnership agreement, petitioner was not liable to his former partners for his deficit capital account balance. Accordingly, we limit our examination here to the question of whether petitioner was released from actual or potential liability to third parties.
The terms of the assignment require petitioner to remain liable to Verble for amounts that petitioner would have been required to pay had he *642 remained a partner, limited to the extent of his deficit capital account balance and restricted to a period of 25 years. Respondent does not suggest and has not offered any evidence tending to show that Verble has or will pay a liability on behalf of petitioner for which he was or will not be reimbursed by petitioner. Because the terms of the assignment required petitioner to remain liable to Verble for amounts that petitioner would have had to pay had he remained a partner, and because respondent has not shown that these terms were not followed by petitioner, we conclude that petitioner was not released from liabilities in 1975. Having so concluded, it is unnecessary for us to determine the correct amount of petitioner's deficit capital account balance at the date of the assignment. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, any reference to "Rules" shall be deemed to refer to the Tax Court Rules of Practice and Procedure, and unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
2. We assume that the parties meant negative capital account.↩
3. As in effect during the taxable years in question, section 704(a) provided as follows: SEC. 704(a)↩. Effect of Partnership Agreement.--A partner's distributive share of income, gain, loss, deducation, or credit shall, except as otherwise provided in this section, be determined by the partnership agreement. 4. As in effect during the taxable years in question, section 704(b) provided as follows: SEC. 704(b). Distributive Share Determined by Income or Loss Ratio.--A partner's distributive share of any item of income, gain, loss, deduction, or credit shall be determined in accordance with his distributive share of taxable income or loss of the partnership, as described in section 702(a)(9), for the taxable year, if-- (1) the partnership agreement does not provide as to the partner's distributive share of such item, or (2) the principal purpose of any provision in the partnership agreement with respect to the partner's distributive share of such item is the avoidance or evasion of any tax imposed by this subtitle. ↩
5. Section 704 was amended by section 213(d), Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1520, 1548, and section 704(b)↩, as amended, replaced the "tax-avoidance or -evasion" test with a "substantial economic effect" test.
6. See also Magaziner v. Commissioner,T.C. Memo. 1978-205↩.
7. The record does not show the amount of petitioner's tax basis in Castleton and Altamonte in 1973, 1974, or 1975. Because respondent has not challenged petitioner's share of partnership deductions other than the special allocations of interest expense, we assume that such basis existed at least to the extent of those deductions.↩
8. The pertinent parts of sections 23-4-1-18 and 23-4-1-40, Ind. Code Ann. (Burns 1972), provide: 23-4-1-18 Rules determining rights and duties of partners.--The rights and duties of the partners in relation to the partnership shall be determined, subject to any agreement between them * * *. 23-4-1-40 Rules for distribution.--In settling accounts between the partners after dissolution * * * subject to any agreement to the contrary↩ * * *. [Emphasis supplied.]
9. SEC. 741. RECOGNITION AND CHARACTER OF GAIN OR LOSS ON SALE OR EXCHANGE. In the case of a sale or exchange of an interest in a partnership, gain or loss shall be recognized to the transferor partner. Such gain or loss shall be considered as gain or loss from the sale or exchange of a capital asset, except as otherwise provided in section 751↩ (relating to unrealized receivables and inventory items which have appreciated substantially in value).
10. Respondent's determination that petitioner must recognize capital gain to the entire extent of his deficit capital account balance in Castleton apparently assumes that petitioner's tax basis was zero. As stated in footnote 7, supra,↩ the record herein does not show the amount of that basis. In any event, our resolution of this issue renders the determination of petitioner's tax basis unnecessary.